# EXHIBITS
## A -E

Re: MYRNA ABAD v. WILLIAMS, COHEN & GRAY,
INC.; et al.; Case No.: C 06-2550 SBA (JCS)

REPLY TO COURT ORDER OF MARCH 23, 2007 AND
MOTION TO SUPPLEMENT CITED AUTHORITIES

EXHIBIT A

1   Irving L. Berg (SBN 36273)
    THE BERG LAW GROUP
2   433 Town Center No. 493
    Corte Madera, CA 94925
3   (415) 924-0742
    (415) 891-8208 (FAX)
4
    O. Randolph Bragg
5   HORWITZ, HORWITZ & ASSOC.
    25 E. Washington St, Suite 900
6   Chicago, IL 60602
    (312) 372-8822
7   (312) 372-1673 (FAX)

8   ATTORNEYS FOR PLAINTIFF

9

10              UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                  SAN FRANCISCO DIVISION

13

14  FRANCISCO R. BRACAMONTE, an          Case No.: C 03-1821 SI
    individual, on behalf of himself and all
15  others similarly situated,           DECLARATION OF JAMES C.
                                         STURDEVANT IN SUPPORT OF
16               Plaintiff,              PLAINTIFF'S MOTION FOR ATTORNEY'S
    v.                                   FEES
17
    ESKANOS & ADLER, P.C.; IRWIN J.      Date:       December10, 2004
18  ESKANOS; DONALD R. STEBBINS;         Time:       9:00 a.m.
    JEFF DANIEL; JEROME M. YALON, JR.,   Place:      450 Golden Gate Avenue
19  individuals,                                     San Francisco, CA
                                         Courtroom:  10, 19th Floor
20               Defendants.             Judge:      The Honorable Susan Illston

21

22      I, James C. Sturdevant, declare as follows:

23      1.      I make this declaration based upon my personal knowledge, and if called upon to

24  do so, could and would testify competently as to the matters stated herein.

25      2.      I am an attorney admitted to practice in the State of California and am a member

26  of the Bar of this Court. I am the principal in the Sturdevant Law Firm, a professional

27  corporation. I submit this Declaration in support of Plaintiffs' Application for Award of

28  Attorneys' Fees.

                            1

        DECLARATION OF JAMES C. STURDEVANT IN SUPPORT OF
        PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

1    **Legal Experience and Qualifications**

2    3.    I am a graduate of Boston College School of Law where I received my J.D. in

3    1972, and of Trinity College, where I received a B.A. in 1969.

4    4.    I have concentrated on litigation throughout my legal career. From 1972 through

5    May 1978 I was employed with the Tolland-Windham Legal Assistance Program, Inc. and

6    Connecticut Legal Services, Inc., where I focused on significant housing, food, and

7    unemployment compensation litigation, primarily in federal courts, legislation, and

8    administrative advocacy. Beginning in October 1978 I initiated and directed all major litigation

9    for the San Fernando Valley Neighborhood Legal Services, Inc.

10    5.    In 1980 I formed my own private practice, emphasizing unfair business practices

11    and civil rights cases. Since 1986 I have concentrated on lender liability, consumer protection

12    class actions, complex employment discrimination cases, and unlawful/unfair business practice

13    cases. In total, I have had over 30 years of experience trying and settling class action and other

14    complex cases. I have represented consumers and low-income and other individuals in consumer

15    class actions, employment discrimination cases, environmental litigation, unfair business

16    practices litigation, and other public interest actions in both state and federal courts. I have

17    handled the pre-trial, trial, and appellate work for cases in my firm for which I was lead or

18    co-counsel. Examples of my significant litigation follow.

19    6.    Counsel for statewide plaintiff class certified in *Beasley, et al. v. Wells Fargo

20    Bank*, San Francisco Superior Court Case No. 861555. The class challenged Wells Fargo's

21    practice of imposing late and over-limit charges on its consumer credit card account holders as a

22    violation of California's law prohibiting liquidated damages in consumer contracts. The jury

23    awarded the class damages exceeding $5,200,000. The court awarded attorneys' fees of nearly

24    $2,000,000.00 to plaintiffs. The Court of Appeal affirmed both judgments. *Beasley v. Wells

25    Fargo Bank, N.A.* (1991) 235 Cal.App.3d 1383 (merits); *id.*, 235 Cal.App.3d 1407 (fees).

26    7.    Counsel for statewide class of Crocker Bank credit card holders challenging the

27    legality of over-limit and late charges. *Kovitz, et al., v. Crocker National Bank, et al.*, San

28    Francisco Superior Court Case No. 868914. Settlement provided damages approximating

2

1  $3,800,000.00, plus interest, to the class.

2      8.      Counsel for statewide class of consumer credit card holders in *Hitz v. First*
3  *Interstate Bank of California*, San Francisco Superior Court Case No. 870897. The plaintiff
4  class challenged the bank's imposition of late fees and over-limit penalty charges as unlawful
5  liquidated damages in violation of Civil Code §1671(c) and (d). Plaintiff class awarded more
6  than $13.9 million in damages, which was reduced on appeal. *Hitz v. First Interstate Bank*
7  (1995) 38 Cal.App.4th 274.

8      9.      Counsel for statewide settlement class of consumer credit card holders in *Andrews*
9  *v. First Interstate Bank of California*, San Francisco Superior Court Case No. 953575, a
10  follow-up action to Hitz. Court approved settlement fund of $1.5 million and class counsel
11  attorneys' fees, costs, and expenses in the amount of 30 percent of the settlement fund.

12      10.      Counsel for statewide certified plaintiff class and a consumer organization in *Ting*
13  *v. AT&T*, U.S. District Court, Northern District of California, Case No. C 012969 BZ ADR, a
14  class action lawsuit against AT&T on behalf of seven million California consumers. In its
15  landmark ruling, the court found that the mandatory arbitration clause was illegal,
16  unconscionable, and unenforceable. *Ting v. AT&T*, 182 F.Supp.2d 902 (N.D. Cal. 2002). The
17  Ninth Circuit affirmed in most respects in a significant opinion. 319 F.3d 1126 (9th Cir.), *cert.*
18  *denied*, 124 S.Ct. 53 (2003).

19      11.      Lead counsel for consumers, a consumer organization, and the Consumer
20  Attorneys of California in *Badie v. Bank of America*, San Francisco Superior Court No. 944916,
21  challenging Bank of America's attempt to impose unilaterally alternative dispute resolution
22  ("ADR") on its checking and credit card account customers. Court of Appeal held that the ADR
23  clause was a new material term to the agreement which required clear, unmistakable consent by
24  the customer. *Badie v. Bank of America* (1998) 67 Cal.App.4th 779.

25      12.      Lead counsel for the plaintiffs in *Yu v. Signet Bank/Virginia, et al.*, Alameda
26  County Superior Court Case No. H-184674-8, a proposed statewide consumer class action
27  alleging that defendant Signet Bank/Virginia engaged in a long-term unlawful business practice.
28  *Yu v. Signet Bank* (1999) 69 Cal.App.4th 1377 held the complaint properly alleged abuse of

3

1  process for an out-of-state credit card issuer to sue California residents in the municipal court in
2  Richmond, Virginia without obtaining personal jurisdiction and then garnishing wages of
3  California residents through a Virginia office of the California employer.

4      On remand, defendants renewed their litigation strategy, and demurred to the amended
5  complaint on the grounds that the litigation privilege codified in Civil Code § 47(b)(2) and the
6  First Amendment to the U.S. Constitution absolutely sanctioned the distant forum abuse
7  program. They claimed that the seminal decision in *Barquis v. Merchants Collection Association*
8  (1972) 3 Cal.3d 94, had been vitiated by subsequent decisions of the California Supreme Court,
9  and that the First Amendment created an absolute bar to any judicial relief for claims of abuse of
10  process and violations of California's Unfair Competition Law. In February, 2001, the trial court
11  sustained the demurrer. On appeal, the Court of Appeal reversed judgment based on the
12  sustaining of the demurrer. It held that its opinion in *Yu I* was law of the case with respect to
13  Barquis because its conclusions were necessary to the ultimate result. *Yu v. Signet Bank/Virginia*
14  (2002) 103 Cal.App.4th 298, rev. denied. Independently, it held that plaintiffs had demonstrated
15  a probability of success on their underlying claim, as they had presented triable issues of fact on
16  their abuse of process and Unfair Competition Law claims previously. After remand, the case
17  settled for nearly $15 million.

18      13.    Co-lead counsel for the plaintiffs in *The Providian Credit Card Cases*, San
19  Francisco Superior Court, Judicial Council Coordination Proceeding No. 4085, a nationwide
20  consumer class action challenging the unlawful, unfair, and deceptive practices of defendants
21  Providian Financial Corporation, Providian Bank, Providian National Bank, and Providian
22  Bancorp Services in connection with advertising and soliciting of credit card holders. The trial
23  court approved a nationwide settlement of $105 million, plus injunctive relief.

24      14.    Lead counsel for plaintiff in *Miller v. Bank of America, et al.*, San Francisco
25  Superior Court Case No. 301917, a statewide class action lawsuit against Bank of America
26  challenging the bank's practice of seizing exempt funds from Social Security direct deposit
27  accounts to satisfy claims it has against the account holders. The San Francisco Superior Court
28  certified the case as a statewide class action consisting of more than 1.1 million customers. The

4

1  bank's writ petition and petition for reconsideration of the court's 2003 order denying summary
2  judgment based upon federal preemption were denied. After a five-week jury trial in February,
3  2004, the jury awarded damages exceeding $1.2 billion consisting of more than $75 million in
4  compensatory damages, $1,000 in special statutory damages to each class member under the
5  Consumer Legal Remedies Act because they are elderly and/or disabled and suffered significant
6  emotional or economic damage, and $275,000 to the named plaintiff for emotional distress.

7      Finding that the Bank of America engaged in "unconscionable", "unlawful", "unfair" and
8  "fraudulent" conduct, San Francisco Superior Court Judge Anne Bouliane on October 13, 2004,
9  issued a 48-page tentative decision holding the Bank accountable for its ongoing business policy
10  and practice of seizing exempt funds from Social Security direct deposit accounts of more than
11  one million elderly and disabled Californians from August, 1994 to the present. This ruling
12  presents the detailed findings of fact and legal conclusions by the Court that follow the jury
13  verdict in February, 2004, that awarded over $1 billion against the bank. In addition, the Court
14  ordered the Bank to "immediately implement whatever procedures or other means are necessary
15  to prevent exempt Social Security funds and other governmental benefits from being subject to
16  such setoffs or collection efforts"; ordered the Bank to make restitution to the members of the
17  class in the amount of $284,385,741, plus pre judgment interest, which will be in excess $80
18  million; affirmed the jury findings and award of damages of $1,000 per class member from
19  whom the Bank improperly seized Social Security funds, concluding that each class member
20  whose funds were seized suffered substantial emotional or economic damage; and ordered the
21  Bank to "identify, locate and repay each class member from whom it improperly acquired Social
22  Security funds."

23      15.    Lead counsel in the statewide plaintiff class certified in *Haghighi, et al. v. Bank of
24  America*, NT & SA, San Francisco Superior Court Case No. 949434. The settlement agreement
25  approved in July of 1995 provided recovery of $1,885,000 for the class.

26      16.    Lead counsel for a statewide class of Security Pacific credit cardholders who
27  challenged the legality of credit card over-limit and late charges in *McClendon v. Security Pacific
28  National Bank*, Alameda County Superior Court Case No. 613722-5. Settlement, approved by

5

DECLARATION OF JAMES C. STURDEVANT IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

1   the trial court, provided a settlement fund of $2.6 million.

2       17.    Lead counsel for the plaintiff class in *Patterson v. ITT Consumer Financial*
3   *Corporation, et al.*, San Francisco Superior Court Case No. 936818. Case challenged the
4   defendant finance companies' and their affiliated insurance companies' deceptive and unlawful
5   practices. Settlement of approximately $4 million in monetary benefits to the plaintiffs and
6   consumer class, as well as significant injunctive relief.

7       18.    Counsel for plaintiffs and the plaintiff classes in *Genzale, et al. v. Zenzi's Beauty*
8   *College, et al.*, San Francisco Superior Court Case No. 930702, a vocational school fraud case.
9   After a five-week bench trial in mid-1996, the Honorable Alfred G. Chiantelli awarded the
10  affected class members $328,119.44, doubled as statutory penalty to $656,238.88.

11      19.    Co-counsel for the statewide plaintiff class in *Czechowski v. Tandy Corp.*, San
12  Francisco Superior Court Case No. 892821. Plaintiffs alleged Tandy had denied accrued
13  vacation benefits to its terminated employees in violation of California law. Class action
14  settlement providing up to $16,000,000 for a class of approximately 25,000 former Tandy
15  employees.

16      20.    As is indicated from the summary of cases set forth above, I have had over thirty
17  years of experience as an attorney trying and settling class action and complex cases. My
18  experience and standing in the fields of appellate law, law and motion, trial work and
19  negotiations is also quite extensive. I have served as lead counsel at numerous trials and
20  evidentiary hearings of complex matters; have had more than twenty appellate arguments before
21  the United States and California appellate courts; and have led the negotiation and settlement, or
22  trial, of many multi-million dollar cases.

23                  **The *Bracamonte* Case**

24      21.    I have been contacted by plaintiffs' counsel and have been asked to express my
25  opinion of the reasonableness of the rates sought by class counsel in this case. Based on my
26  review of the Declaration of Irving Berg and plaintiffs' motion for an award of attorneys fees in
27  this case, it is my understanding that the certified plaintiff class challenged defendants' debt
28  collection practices under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692,

6

DECLARATION OF JAMES C. STURDEVANT IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

1   *et seq.*

2       22.    I understand that in this case under the settlement the class recovered the
3   maximum allowable under the FDCPA and that the defendants have discontinued their use of the
4   challenged debt collection notice.

5       23.    I know of my own knowledge of Mr. Berg as an attorney of high standing among
6   consumer attorneys and is very competent in representing consumers in class action litigation
7   involving violations of the Fair Debt Collection Practices Act and California's Unfair
8   Competition Law, Business and Professions Code § 17200, *et seq.*

9       24.    I am personally familiar with the reputation, experience and abilities of Irving L.
10  Berg. I have consulted with him on occasion on Fair Debt Collection Practices matters and have
11  co-counseled a case with him involving that statute. Because of my own representation of
12  consumers in class and class representative actions, I know of my own personal knowledge the
13  hourly rates of consumer class action attorneys.

14      25.    The hourly rate sought by Irving L. Berg in this case is lower than the prevailing
15  market for attorneys of his experience in consumer class action litigation in the Northern District
16  of California.

17       I declare under penalty of perjury of the laws of the United States that the foregoing is
18  true and correct.

19       Executed this 28 day of October 2004 at San Francisco, California.

20
21
22                                                      // s //
                                                  JAMES C. STURDEVANT
23
24
25
26
27
28

7

DECLARATION OF JAMES C. STURDEVANT IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

EXHIBIT B

1   Irving L. Berg (SBN 36273)
    THE BERG LAW GROUP
2   433 Town Center No. 493
    Corte Madera. California 94925
3   (415) 924-0742

4   O. Randolph Bragg
    HORWITZ, HORWITZ & ASSOCIATES
5   25 East Washington Street, Suite 900
    Chicago, Illinois 60602
6   (312) 372-8822

7   Attorneys for Plaintiff
    FRANCISCO BRACAMONTE
8

9                    UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                     SAN FRANCISCO DIVISION

12

13  FRANCISOC BRACAMONTE on behalf    )  Case No.: C 03-1821 SI
    of himself and all others similarly situated,  )
14                                    )
                                      )
15           Plaintiff,               )  **Date:**      December 10, 2004
                                      )  **Time:**      9:00 a.m.
16  vs.                               )  **Place:**     450 Golden Gate Avenue
                                      )  **Courtroom:** 10, 19th Floor
17  ESKANOS & ADLER, P.C.; IRWIN J.   )  **Judge:**     Honorable Susan Illston
    ESKANOS; DONALD R. STEBBINS; JEFF )
18  DANIEL; JEROME M. YALON, JR.,     )
19  individuals,                      )
                                      )
20           Defendants.              )
                                      )
21

22  _____  )

23
                    **DECLARATION OF MARK A CHAVEZ**
24                   **REGARDING HOURLY RATES**

25

26

27

28

                    DECLARATION OF MARK A. CHAVEZ REGARDING HOURLY RATES
                                                        C 03-1821 SI

1    I, MARK A. CHAVEZ, hereby declare as follows:

2    1.    I make this Declaration of my own personal knowledge, and if called to testify,
3    I could and would testify competently to the matters stated herein.

4    2.    I am an attorney duly licensed to practice before all courts of the State of
5    California. I am a partner in the law firm of Chavez & Gertler LLP.

6    3.    In order to demonstrate the basis for this declaration, I set forth below a
7    summary of my professional experience and qualifications.

8    4.    I received my B.A. summa cum laude from the University of the Americas in
9    1975 and my J.D. from Stanford Law School in 1979. In the fall of 1978, I served as a
10   Judicial Extern for the Honorable Mathew O. Tobriner, then Senior Associate Justice of the
11   California Supreme Court. After graduating from law school, I joined the Civil Division of
12   the United States Department of Justice in Washington, D.C., through the Attorney General
13   Honors Program. I was subsequently employed with the law firm of Pillsbury, Madison &
14   Sutro in San Francisco, California as an associate, and was a partner in the law firm of
15   Farrow, Bramson, Chavez & Baskin in Walnut Creek, California. I am currently a partner in
16   the law firm of Chavez & Gertler LLP in Mill Valley, California. I am A-V rated by
17   Martindale-Hubbell.

18   5.    I am a member in good standing of the California State Bar and the bars of
19   United States District Courts for the Northern, Eastern, Central and Southern Districts of
20   California. In connection with individual cases, I have been admitted to appear before the
21   United States District Courts for the District of Arizona, the District of Colorado, the District
22   of Columbia, the Middle District of Florida, the Southern District of Florida, the District of
23   Idaho, the Northern District of Illinois, the Eastern District of Pennsylvania, the District of
24   New Jersey, the Eastern District of New York and the Western District of Washington. I have
25   also been admitted pro hac vice and have appeared before state trial courts in Alabama,
26   Arizona, Florida, Missouri, Ohio and Washington.

27   6.    I am admitted to practice before the United States Supreme Court and the
28   United States Court of Appeals for the Ninth Circuit, the District of Columbia Circuit and the

1

1   Eleventh Circuit. I have argued appeals before the United States Court of Appeals, the

2   California Supreme Court and the California Court of Appeals. The published appellate

3   opinions in the cases I have been involved in include the following:

4      (a)  Washington Mutual Bank v. Superior Court, 24 Cal.4th 906 (2001);

5      (b)  Linder v. Thrifty Oil Co., 23 Cal.4th 429 (2000) (argued as counsel for

6   amicus);

7      (c)  Smiley v. Citibank, 11 Cal.4th 138 (1995) (argued as counsel for amicus);

8      (d)  AICCO, Inc. v. Insurance Co. of North America, 90 Cal.App.4th 579 (2001)

9   (argued as counsel for amicus);

10     (e)  Olszeweski v. ScrippsHealth, 88 Cal.App.4th 1268 (2001) (review granted);

11     (f)  Norwest Mortgage, Inc. v. Superior Court, 72 Cal.App.4th (1999);

12     (g)  Rowland v. U.S. Dist. Court for Northern Dist. Of California, 849 F.2d 380

13  (9th Cir. 1988);

14     (h)  Toussaint v. McCarthy, 801 F.2d 1080 (9th Cir. 1986); and

15     (i)  Gardiner v. Sea-Land Service, Inc., 786 F.2d 943 (9th Cir. 1986).

16    7. In the course of my career, I handled a number of other significant cases in

17  federal court at the district court (but not appellate) level including the following:

18     (a)  Karahalios v. National Federal of Federal Employee, Local 1263, 489 U.S.

19  527 (1989) - action involving the scope of federal court jurisdiction over federal labor

20  matters;

21     (b)  United States v. PATCO, 524 F. Supp. 160 (D.D.C. 1981) - action to enjoin

22  the air traffic controllers from engaging in a nationwide strike;

23     (c)  United Presbyterian Church v. Reagan, et al., 738 F.2d 1375 (D.C. Cir. 1984) -

24  action challenging the constitutionality of President Reagan's Executive Order redefining the

25  scope of permissible intelligence activities by the CIA, NSA and FBI.

26    8. Throughout my career, I have been actively involved in a number of

27  organizations seeking to promote the interests of consumers through public interest litigation.

28  I was a founding member of the Stanford Public Interest Law Foundation in 1978 and in 1993

1    was one of three original members named honorary members of its Board of Directors in
2    recognition of the extent and duration of our support for the organization. For several years, I
3    was a member of the Board of Directors of the San Francisco Trial Lawyers Association and I
4    am a former member of the Board of Governors of the Consumer Attorneys of California
5    (formerly California Trial Lawyers Association). In 1993, I and seven other consumer
6    attorneys from across the country founded the National Association of Consumer Advocates
7    and I am its former Co-Chair, former Vice-President and a former member of its Board of
8    Directors. The National Association of Consumer Advocates is a non-profit corporation
9    formed in response to the belief that an organization of private and public sector attorneys,
10   legal services attorneys, law professors and students, whose primary practice or interests
11   involve the protection and representation of consumers, was needed. Its mission is to promote
12   justice for all consumers by maintaining a forum for information sharing among consumer
13   advocates across the country and to serve as a voice for its members as well as consumers in
14   the ongoing struggle to curb unfair and abusive business practices.

15          9.      I have spoken frequently on various class action and consumer law issues. In
16   recent years, I have given presentations at the annual convention of the American Bar
17   Association, the annual convention of the State Bar of California, the National Consumer
18   Rights Litigation Conference, the annual convention of the Consumer Attorneys of California,
19   the California Bankers Association Conference, and the Banking Litigation Seminar of the
20   Association of the Bar of the City of New York. For six years, I served as Co-Chair of the
21   Practising Law Institute's Consumer Financial Services Litigation Program in New York and
22   San Francisco. I am currently a member of the Editorial Boards of two national publications:
23   Class Action Reports and Consumer Financial Services Law Reporter.

24          10.     Articles that I have recently published include: "The George Court Issues
25   Surprising Endorsement of Class Action Device in Linder v. Thrifty Oil," FORUM,
26   January/February 2001, at 12; "Kraus, Cortez and Future Battlegrounds In Representative
27   Actions Under the Unfair Competition Law," FORUM, July/August 2000, at 33 (co-authored
28   with Alan M. Mansfield). I also co-authored (with Kim Card) a paper entitled "Recent

3

1  Developments In California Law On Class Certification Issues," for the Consumer Attorneys

2  of California 35th Annual Tahoe Seminar Consumer Remedies Program, at which I was a

3  speaker, and an article entitled "California's Unfair Competition Law – The Structure and Use

4  of Business and Professions Code § 17200," for the Practising Law Institute's Consumer

5  Financial Services Litigation 2001 Conference.

6       11.    In the over twenty-three years that I have been practicing law, I have spent a

7  substantial portion of my career litigating class action cases. I have had extensive experience

8  handling such actions in both the federal and state courts. In April 2000, I successfully

9  argued Linder v. Thrifty Oil, 23 Cal. 4th 429 (2000) before the California Supreme Court, on

10  behalf of amicus the Consumer Attorneys of California. Linder was the first decision on class

11  certification issues decided by the California Supreme Court in nearly two decades. I was co-

12  counsel for the plaintiff class in Washington Mutual Bank, F.A. v. Superior Court, 24 Cal.4th

13  906 (2001), in which the California Supreme Court defined the rules governing certification

14  of nationwide classes in California. I have also served as lead or co-lead counsel in over 80

15  other class actions. Although most class actions settle prior to trial, I was co-counsel for the

16  plaintiff class in a two-month federal court class action trial at which 65 witnesses testified

17  and over 1,000 exhibits were introduced.

18       12.    Unlike many plaintiffs' attorneys, I have also had substantial experience

19  representing defendants in large scale class actions. I defended such cases both while I was

20  with the United States Department of Justice and while in private practice. For example, I

21  previously served as lead or co-counsel for the defendants in the following class actions:

22       (a)  Alexandra v. Alamo (Alameda Sup. Ct. No. 640832-9) - statewide class action

23  challenging the price of collision damage waivers sold by a car rental company;

24       (b)  Nosse, et al. v. Volkswagen of America, Inc. (S.F. Sup. Ct. No. 780024) -

25  statewide class action suit seeking damages allegedly resulting from a defective part in 1974-

26  1979 Volkswagen manufactured vehicles; and

27

28

1    (c) Bernice Turbeville v. William Casey and Central Intelligence Agency (E.D.
2  Va. Civil Action No. 81-1058-A) - nationwide class action alleging sex discrimination in
3  promotion, training and overseas assignments of the CIA's female operations officers.

4    13. I stopped representing defendants several years ago in order to exclusively
5  represent plaintiffs in my practice. In recent years, my practice has focused on the
6  representation of plaintiffs in consumer cases challenging the practices of banks, insurance
7  companies, and financial service companies in a variety of contexts, including force-placing
8  insurance, overcharging for insurance, and unlawful collection and repossession practices.
9  Since 1989, I have served or I am currently serving as lead or co-lead counsel in dozens of
10  such cases filed in the state and federal courts around the country.

11    14.    I practice before the United States District Court for the Northern District of
12  California and am familiar with the hourly rates charged by attorneys who practice in the
13  area of consumer class actions before this Court.

14    15.    The hourly rates for attorneys with Irving L. Berg's experience and expertise
15  in consumer class action litigation who practice in the Northern District are equal to or in
16  excess of $345 per hour. Therefore, I believe that $345 per hour would be a reasonable and
17  appropriate hourly rate for Mr. Berg's legal work.

18    I declare under penalty of perjury under the laws of the United States that the
19  foregoing is true and correct.

20

21  DATED: October 28, 2004

22

23

24

25                                  /s/ Mark A. Chavez
                                    Mark A. Chavez
26

27

28

                                5
                DECLARATION OF MARK A. CHAVEZ REGARDING HOURLY RATES
                                                        C 03-1821 SI

EXHIBIT C

2002 U.S. Dist. LEXIS 27829, *

LEXSEE 2002 U.S. DIST. LEXIS 27829

**KATHLEEN R. IRWIN, et al., Plaintiffs, vs. OWEN T. MASCOTT, Defendants**

**NO. C-97-4737 JL, CLASS ACTION**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*2002 U.S. Dist. LEXIS 27829*

**September 9, 2002, Decided**
**September 11, 2002, Filed**

**SUBSEQUENT HISTORY:** Subsequent appeal at *Irwin v. Mascott, 370 F.3d 924, 2004 U.S. App. LEXIS 10959 (9th Cir. Cal., 2004)*

**PRIOR HISTORY:** *Irwin v. Mascott, 2001 U.S. Dist. LEXIS 3285 (N.D. Cal., Feb. 27, 2001)*

**COUNSEL:** [*1] For KATHLEEN R. IRWIN, an individual, NANCY HETH, an individual, LORRAINE L. CASTANEDA, an individual on behalf of themselves and all others similarly situated, Plaintiffs: Paul Arons, Law Office of Paul Arons, Redding, CA; O. Randolph Bragg, Horowitz Horowitz & Associates, Chicago, IL; Lorraine Ellen Baur, Law Offices of Lorraine Ellen Baur, Ukiah, CA.

For OWEN T. MASCOTT, an individual, COMMONWEALTH EQUITY ADJUSTMENTS, INC, a California corporation, ERIC W. BROWNING, an individual, defendants: William C. Reeves, Murphy Pearson Bradley & Feeney, Sacramento, CA.

**JUDGES:** JAMES LARSON, MAGISTRATE JUDGE.

**OPINION BY:** JAMES LARSON

**OPINION:**

**ORDER GRANTING PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES A LITIGATION EXPENSES PURSUANT TO**

**SETTLEMENT AGREEMENT, AND FOR FURTHER DISTRIBUTION TO THE CLASS (proposed)**

Plaintiffs have filed a motion for attorneys' fees and costs incurred by plaintiffs' counsel pursuant the Settlement Agreement that was preliminarily approved by this Court on August 1, 2001 and finally approved by this Court on January 17, 2002. Having considered the memorandum of points and authorities filed by plaintiffs, the declarations of attorneys O. Randolph Bragg, Paul Arons, Lorraine [*2] Baur and Sharon Grace and attached exhibits, and the declaration of Brad Seligman, and good cause appearing therefore,

IT IS HEREBY ORDERED that plaintiffs' motion is granted as set forth below. The Court finds that:

1. The prevailing market rate for the work performed by O. Randolph Bragg in this case is $ 400.00 per hour. It was reasonable for him to spend 59.70 hours working on this case and his lodestar compensation is $ 23,880.00. It was also reasonable for him utilize paralegals to perform 12.20 hours of work at the rate of $ 100.00 per hour, for total additional compensation of $ 1,220.00.

2. The prevailing market rate for the work performed by Paul Arons in this case is $ 350.00 per hour. It was reasonable for him to spend 1,374.20 hours working on the merits of this case and his lodestar compensation is $ 480,970.00.

3. The prevailing market rate for the work performed by Sharon Grace in this case is $ 350.00 per hour. It was reasonable for her to spend 147.80

hours working on this case and her lodestar compensation is $ 51,730.00.

4. The prevailing market rate for the work performed by Lorraine Baur in this case is $ 200.00 per hour. It was reasonable for her to spend [*3] 172.35 hours working on this case and her lodestar compensation is $ 34,470.00.

5. Pursuant to the Settlement Agreement, § V.4., the award for attorneys' fees for work on the merits may not exceed $ 500,000.00. Were it not for this limitation, the Court would award plaintiffs' counsel the full lodestar amount of $ 591,535.00, and would consider whether to enhance the fee. Given the limitation the Court does not reach the issue of fee enhancement. Plaintiffs' attorneys have represented to the Court that they have agreed among themselves on how to apportion a $ 500,000.00 fee award. Plaintiffs' counsel are hereby awarded the full $ 500,000.00 allowed under the Settlement Agreement and they are directed forthwith to transfer this money from the Settlement Fund and apportion it pursuant to their agreement.

6. Plaintiffs have incurred litigation costs totaling $ 99,034.05. Pursuant to Section V.4 of the Settlement Agreement plaintiffs agreed to a cap of $ 80,000.00 on litigation costs. Plaintiffs have requested the Court to modify or waive this limitation. Defendants do not have any stake in the outcome of this issue, since no money remaining in the Settlement Fund may be returned to [*4] them. The Court concludes that the $ 80,000.00 limitation was the result of an inadvertent error by plaintiffs' counsel, that enforcement of the limitation in this case will not significantly advance the interests of the class, and that it would be inequitable to enforce this limitation against plaintiffs' counsel. Accordingly, the Court modifies the cost limitation and awards plaintiffs' counsel $ 99,034.05 in litigation costs.

7. The class administration costs, including counsel fees, set forth in the Declaration of Paul Arons in Support of Application for An Award of Attorneys' Fees and Costs, PP 11 and 12 are approved as reasonable. Pursuant to the Settlement Agreement, plaintiffs' counsel shall continue to pay administration costs from the Settlement Fund as they come due.

8. Plaintiffs' request for a further monetary distribution to class members is approved. No later than October 15, 2002, from the funds remaining in the Settlement Fund at that time, plaintiffs shall make a *pro rata* distribution to all class members who cashed their settlement checks and whose additional payment will be greater than $ 2.00. Plaintiffs shall set aside a reserve of the amount needed to pay [*5] accounting and tax preparation fees, to pay for the printing and mailing of the second round of settlement payments, and for any other expenses that plaintiffs anticipate will be incurred during the pendency of this lawsuit.

DATED: September 9, 2002

MAGISTRATE JUDGE JAMES LARSON

UNITED STATES DISTRICT COURT

EXHIBIT D

LEXSEE 2006 US DIST LEXIS 42637



Positive
As of: Mar 27, 2007

## ALIYA NELSON v. SELECT FINANCIAL SERVICES, INC.

### CIVIL ACTION NO. 05-3473

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### *2006 U.S. Dist. LEXIS 42637*

### June 8, 2006, Decided
### June 8, 2006, Filed

**SUBSEQUENT HISTORY:** As Amended, June 8, 2006.

**PRIOR HISTORY:** *Nelson v. Select Fin. Servs., 430 F. Supp. 2d 455, 2006 U.S. Dist. LEXIS 24835 (E.D. Pa., 2006)*

**COUNSEL:** [*1] For ALIYA NELSON, Plaintiff: CARY L. FLITTER, LUNDY FLITTER BELDECOS & BERGER PC, NARBERTH, PA; THEODORE E. LORENZ, LUNDY FLITTER BELDECOS & BERGER, NARBERTH, PA.

For SELECT FINANCIAL SERVICES, INC., Defendant: EDWIN M. MATZKIN, EDWIN M. MATZKIN, ATTORNEY AT LAW, JENKINTOWN, PA.

**JUDGES:** Stewart Dalzell, J.

**OPINION BY:** Stewart Dalzell

**OPINION:**

### ORDER

AND NOW, this 8th day of June, 2006, upon consideration of plaintiff's motion for award of damages and fees (docket entry # 21), defendant's response thereto, and plaintiff's motion for leave to file reply (docket entry # 23), which attaches the

proposed reply as an exhibit, and the Court finding that:

(a) On April 28, 2006, we granted summary judgment in favor of Aliya Nelson, holding that Select Financial Services, Inc. violated *Sections 1692e* and *1692e(10)* of the Fair Debt Collection Practices Act ("FDCPA") when it used the phrase "verifies the validity of this debt" in an October 5, 2004 letter to Nelson, see *Nelson v. Select Fin. Servs., 430 F. Supp. 2d 455, 2006 WL 1159931 (E.D. Pa. Apr. 28, 2006), 430 F. Supp. 2d 455*;

(b) We ordered the parties to submit supplemental briefs addressing damages and attorney's fees, see [*2] Order of Apr. 28, 2006 PP2-3, which they have done, but before addressing those submissions, we review the relevant portions of the FDCPA;

(c) Congress enacted the FDCPA in light of "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors . . . . [that] contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy," *15 U.S.C. § 1692(a)*;

(d) The statute is designed "to eliminate abusive debt collection practices by debt collectors . . . and to promote consistent State action to protect consumers against debt collection abuses," *15*

*U.S.C. § 1692(e)*;

(e) The FDCPA provides for actual and statutory damages, as well as reasonable attorney's fees:

> Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of--
>
> (1) any actual damage sustained by such person as a result of such failure; (2) (A) in the case of any action by an individual, such additional [*3] damages as the court may allow, but not exceeding $ 1,000; . . . .
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. . . .

*15 U.S.C. § 1692k(a)*;

(f) The FDCPA also protects debt collectors who have made a bona fide error:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

*15 U.S.C. § 1692k(c)*;

(g) Notably, "attorney's fees should not be construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general," *Graziano v. Harrison, 950 F.2d 107, 113 (3d Cir. 1991)* (emphasis added);

(h) We turn now to Nelson's motion, which seeks statutory damages, legal fees, and [*4] costs, but not actual damages;

(i) Select first argues that Nelson is not entitled to actual damages, see Def.'s Br. in Supp. of Denial of Damages Legal Fees and Costs ("Def.'s Br.) at unnumbered page 2, an unnecessary argument since Nelson does not claim them, see Pl.'s Br. in Supp. of Mot. for Damages and Fees ("Pl.'s Mot.") 4 ("this was not a case of actual damages -- and none were claimed");

(j) Accordingly, we shall not grant actual damages;

(k) Select next contends that Nelson should not receive statutory damages because "the single violation is hyper-technical," did not inflict actual damage, and does not satisfy the standard in *§ 1692k(b)(1)*, Def.'s Br. at unnumbered page 3;

(l) In determining damages to be awarded pursuant to *§ 1692k(a)(2)(A)*, we must consider, "among other relevant factors . . . the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional," *15 U.S.C. § 1692k(b)(1)*;

(m) First, this record lacks evidence about the frequency and persistence of Select's noncompliance; n1

(n) Next, the parties disagree as to what the record [*5] shows about the nature and intent of the violation, with Nelson contending that a sophisticated debt collector such as Select knew or shown have known it was using misleading language, and Select asserting that Nelson has provided no evidence that its conduct was intentional;

(o) What is clear is that Select, a professional debt collector, has not asserted that it accidentally or mistakenly used the deceptive language, but instead, at the summary judgment stage, steadfastly defended its language as being in compliance with the FDCPA;

(p) Now, after we held that Select conveyed a false message to Nelson in violation of a federal statute, Select describes the violation as "hyper-technical;"

(q) Select's dismissive characterization -- which

alone confirms that what it did here was no accident but part of its low regard for the law that governs its business -- underscores the continuing need for citizens like Nelson to step for-ward, as Congress intended, and act as private attorneys general to challenge debt collectors who use deceptive collection methods;

(r) We also find relevant that Select needlessly delayed this case and wasted the Court's scarce time and resources, as well as Nelson's, [*6] by failing to timely respond to the complaint, thereby allowing the case to enter default and then requiring us to resolve its motion to set aside the entry of default; n2

(s) On these facts, we find that a statutory damages award of $ 1,000 is just;

(t) Turning now to the request for attorney's fees, Nelson seeks $ 24,693.80 in fees and costs for: preparing, filing, and serving the complaint; preparing and serving discovery; telephone calls and letters to defendant's counsel; preparing entry of default documents under *Fed. R. Civ. P. 55*; drafting an opposition to defendant's motion to vacate default; drafting a motion and brief for judgment on the pleadings; drafting a brief in response to our Order requiring supplemental briefing; preparing the instant motion and brief, which include time sheets and certifications as exhibits, and the reply to Select's brief, see Pl.'s Br. 6;

(u) Nelson has, as required, thoroughly documented her fee request by appending to her motion her attorneys' detailed time sheets and their certifications, as well as the certification of an attorney not involved in this case, n3 see *Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)* ("The [*7] party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.");

(v) Since Nelson has met her burden, in a statutory fee case such as this "the party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee," *Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990)*;

(w) Notably, our Court of Appeals has held that a "district court cannot 'decrease a fee award based on factors not raised at all by the adverse party,'" id. (quoting *Bell v. United Princeton Properties, Inc., 884 F.2d 713,720 (3d Cir.1989))*; n4

(x) Select argues that Nelson is not entitled to attorney's fees because she is not entitled to damages and has not been awarded any relief;

(y) We have already granted Nelson full victory on the merits of her complaint and have now awarded her $ 1,000 in additional damages, pursuant to *15 U.S.C. § 1692k(a)(2)(A)*, so Select's argument is frivolous; n5

(z) Select's brief does not challenge the attorneys' rates, their hours, nor any category of their work, [*8] see *Bell, 884 F.2d at 720-21*, despite our Order of April 28, 2006 that required Nelson to brief the issues of damages and attorneys fees and for Select to respond to her brief;

(aa) Nowhere in its brief does Select dispute the reasonableness of the requested fees with the specificity our jurisprudence requires, see id.;

(bb) By simply stating that an award of the requested sum would be "unreasonable" and "obscene," see Def.' Br. at unnumbered 8, Select has leveled precisely the sort of conclusory cavil that Bell disallowed, thereby failing to create any factual issues or raise any specific objections to which we might respond, see *884 F.2d at 720-21*; n6

(cc) Moreover, by not challenging any particular type of work by Nelson's attorneys and then articulating grounds upon which we might find such work unreasonable, Select deprived Nelson of "a fair chance to respond and defend [her] request," id. at 720;

(dd) Select's utter failure to dispute Nelson's requested fees with the requisite specificity deprives us of the ability to exercise discretion in adjusting the fee award, see *id. at 721* ("[T]he district [*9] court retains a great deal of discretion in deciding what a reasonable fee award is, so long as any reduction is based on objections actually raised by the adverse party.); see also *Interfaith Community Organization v. Honeywell Intern., Inc., 426 F.3d 694, 711 (3d Cir. 2005)* ("The court may not reduce an award sua sponte; rather, it can only do so in response to specific objections made by the opposing party."); and

(ee) Accordingly, we shall grant Nelson's

motion for attorney's fees and costs in the requested sum of $ 24,693.80,

> N1 As Nelson notes, the letter containing the language that violates the FDCPA appears to be a form letter. Though the format and language of the letter strongly suggest that Select used it for other debtors, Nelson has not submitted any evidence on this issue, so we shall not make such an assumption. Cf. *Withers v. Eveland, 988 F.Supp. 942, 948 (E.D. Va. 1997)* (inferring from deposition of defendant's vice-president that defendant sent collection letter violative of FDCPA to many debtors).

n2 The parties offer different versions of the events leading to default. Nelson contends that Select represented the case was settled, but then withdrew the offer and

failed to timely respond to the complaint after being given extra time to do so. Pl.'s Br. Lorenz Certification P16. Select states that the parties were actively negotiating settlement when Nelson filed for entry of default, despite knowing that Select's decision-maker was ill. Def.'s Br. at unnumbered 1. Regardless of where the truth lies, the relevant fact is that Select failed to meet its obligation to file a timely answer, even after we extended the deadline. Select could have requested more time from us, but chose not to. It cannot now blame others for its own failure to meet deadlines.

[*10]

n3 Nelson breaks down the fees and costs as follows:

| | Hours | Rate | Amount |
|---|---|---|---|
| Cary L. Flitter | 12.9 | $ 430.00 | $ 5,547.00 |
| Theodore Lorenz | 62.4 | $ 295.00 | $ 18,408.00 |
| Joan Raughley | .5 | $ 115.00 | $ 57.50 |
| Robin Pomerantz | 2.6 | $ 115.00 | $ 299.00 |
| Law Clerk | .5 | $ 115.00 | $ 57.50 |
| Photocopying | | | $ 13.80 |
| Complaint filing fee | | | $ 250.00 |
| Metro Filing Serv., Inc. | | | $ 61.00 |
| TOTAL | | | $ 24,693.80 |

See Pl.'s Br. 9, Lorenz Certification PP12-14, Ex. A Timesheet 8; Pl.'s Reply 4 (adding three hours for time spent on reply).

Flitter is a partner in his law firm and has been a member of the bar for twenty-five years. Pl.'s Br. Flitter Certification PP2-3. He is responsible for litigation at his firm, and

his work includes commercial litigation and consumer credit matters. Id. P2. In 2004, our courts approved his then-rate of $ 390 per hour in a consumer credit class action, see Ciccarone v. B.J. Marchese, Inc, 2004 U.S. Dist. LEXIS 26489 No. 03-1660, 2004 WL 2966932, *8 (E.D. Pa. Dec. 22, 2004)., (Shapiro, J.), and his present rate of $ 430.00 reflects a 5% increase from 2004. Id. P16.

Lorenz is an attorney with fourteen years of experience. Pl.'s Br. Lorenz Certification PP4-9. Each attorney has certified, under penalty of perjury, that his rate "is a fair, reasonable, market rate" for an attorney of similar experience and that the hours he worked were reasonable and necessary. Pl.'s Br. Flitter Certification PP15, 21; Lorenz Certification P10. Michael Donovan, an attorney with twenty-two years of experience and a principal at the firm of Donovan Searles, LLC, has also certified that Flitter's and Lorenz's rates are reasonable and appropriate market rates. Pl.'s Br. Donovan Certification PP1-2, 6-8.

Raughley and Pomerantz are legal assistants, with twenty-one and seventeen years of experience in this field, respectively. Lorenz Certification PP20-21. The firm did not bill routine matters, such as typing and copying. Id. PP20-21.

[*11]

n4 In *Bell v. United Princeton Properties, Inc., 884 F.2d 713 (3d Cir. 1989)*, the court resolved a dispute about the meaning of its decision in *Cunningham v. City of McKeesport, 753 F.2d 262 (3d Cir.1985)*. It "read Cunningham I as holding only that a court may not sua sponte reduce the amount of the award when the defendant has not specifically taken issue with the amount of time spent or the billing rate, either by filing affidavits, or, in most cases, by raising arguments with specificity and clarity in briefs (or answering motion papers)." *884 F.2d at 720*. The court specified what is required of parties opposing an award of attorney's fees, an explanation we quote at some length because of its relevance here:

> [T]o the extent the challenger seeks to raise a factual issue-- for example, a claim that the fee applicant's billing rate was lower than claimed--he or she must introduce affidavits

averring the facts upon which the challenge is based. Affidavits are required in such instances because statements made in briefs are not evidence of the facts asserted. As Cunningham I makes clear, the district court, in counsel fee litigation, can never serve as an "expert witness" and may only serve as fact witness when the facts at issue are wholly within its personal knowledge. Thus, with respect to factual issues, the court must be presented with evidence and must make findings based on the evidence.

> Turning to the required level of detail, we emphasize that the adverse party's submissions cannot merely allege in general terms that the time spent was excessive. In order to be sufficient, the briefs or answers challenging the fee request must be clear in two respects. First, they must generally identify the type of work being challenged, and second, they must specifically state the adverse party's grounds for contending that the hours claimed in that area are unreasonable. The briefs must be specific and clear enough that the fee applicants have a fair chance to respond and defend their request.

*Id. at 720* (footnote omitted).

To be sure, the challenging party is not required to "point to each individual excessive entry," but it is required to "specify with particularity the reason for its challenge and the category (or categories) of work being challenged." *Id. at 721*.

Our Court of Appeals forbids sua sponte fee award reductions by district courts for

two reasons. First, such reductions deprive applicants of the right to offer supporting evidence of the reasonableness of the request. See *United States v. Eleven Vehicles, Their Equipment and Accessories, 200 F.3d 203, 212 (3d Cir. 2000)* (citing *Bell, 884 F.2d at 719*). Second, statutory fee litigation is adversarial, so there is simply no need to permit district courts to reduce fee awards on their own initiative. See id.

[*12]

n5 Nelson primarily relies on *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001)*, and *Farrar v. Hobby, 506 U.S. 103, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992)*. Those cases are simply beside the point here. Buckhannon addressed the "catalyst theory," namely whether a "prevailing party" "includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *532 U.S. at 600*. The Court held that it did not. Id. The Court rejected the attempt to allow "an award of attorney's fees when the merits of the plaintiff's case remain unresolved." *Id. at 617* (Scalia, J., concurring). Here, we resolved the merits in Nelson's favor when we granted her motion for summary judgment, and we have now awarded maximal damages. *Buckhannon* is irrelevant.

In *Farrar v. Hobby, 506 U.S. 103, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992)*, the Court explained that "[w]hen the plaintiff's success is purely technical or de minimis, no fees can be awarded," *id. at 117* (O'Connor, J., concurring), thereby reaffirming *Texas State Teachers Assn. v. Garland Independent School Dist., 489 U.S. 782, 792, 109 S. Ct. 1486, 103 L. Ed. 2d 866 (1989)* ("a technical victory may be so insignificant . . . as to be insufficient to support prevailing party status"). Farrar revisited this issue to make

clear that "[w]hile Garland may be read as indicating that this de minimis or technical victory exclusion is a second barrier to prevailing party status, . . . it is part of the determination of what constitutes a reasonable fee." *506 U.S. at 117* (citing *Garland, 489 U.S. at 792*). Thus, the Court did not introduce a new type of exclusion, but instead clarified how a court must apply the long-standing exclusion for de minimis or technical victories.

Nelson demonstrated that Select violated the FDCPA by misrepresenting the effect of her failure to respond to its first letter. Nelson's victory is therefore neither de minimis nor technical, but constitutes complete success in her FDCPA case.

Moreover, as Farrar emphasized, courts are bound by the choices Congress makes in drafting statutes. *Id. at 119*. The statute in question there, *42 U.S.C. § 1988*, "expressly grants district courts discretion to withhold attorney's fees from prevailing parties in appropriate circumstances." Id. The statute at issue here, *15 U.S.C. § 1692*, grants no such discretion to us, as evident from its plain language and the findings in *Graziano, 950 F.2d at 113*. Therefore, Farrar's analysis supports our decision to award attorney's fees here.

[*13]

n6 To illustrate why specific objections are necessary, we need only consider the analysis our courts must undertake to assess reasonable attorney's fees. We must fix the lodestar, which is the product of "the appropriate billing rate for the party's attorneys" and "the number of hours those attorneys reasonably expended on the action." *Interfaith Community Organization v. Honeywell Intern., Inc., 426 F.3d 694, 703 n.5 (3d Cir. 2005)*.

The only evidence we have before us concerning attorneys' rates and time is Nelson's. If Select had, for instance, challenged the requested rates by creating factual issues concerning Nelson's evidence,

Page 7

we would then "make findings based on the evidence." *Bell, 884 F.2d at 720.* But since it has not created any factual issues, if we were to make any determinations now, based solely on Nelson's evidence, we would be acting as an "expert witness," something our Court of Appeals expressly forbids. Id.

It is hereby ORDERED that:

1. Plaintiff's motion for leave to file reply is GRANTED;

2. Plaintiff's motion for damages and fees [*14] is GRANTED in the amount of $ 1,000.00 in statutory damages and $ 24,693.80 in attorney's fees and costs; and

3. The Clerk shall CLOSE this case statistically.

BY THE COURT:

/s/ Stewart Dalzell, J.

ORDER

AND NOW, this 8th day of June, 2006, it is hereby ORDERED that paragraph (q) of our earlier Order of this day is VACATED and in its place the following paragraph shall be substituted:

"(q) Select's dismissive characterization -- which alone confirms that what it did here was no accident but part of its low regard for the law that governs its business -- underscores the continuing need for citizens like Nelson to step forward, as Congress intended, and act as private attorneys general to challenge debt collectors who use deceptive collection methods;".

BY THE COURT:

/s/ Stewart Dalzell, J.

JUDGMENT

AND NOW, this 8th day of June, 2006, for the reasons articulated in the accompanying Order, JUDGMENT IS ENTERED in favor of plaintiff Aliya Nelson and against defendant Select Financial Services, Inc. in the amount of $ 1,000.00 in statutory damages and $ 24,693.80 in attorney's fees and costs.

BY THE COURT:

/s/ Stewart Dalzell, J.

**EXHIBIT E**

(holding that reasonable fee award in ERISA case included fees for motion to establish entitlement to fees); *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) (rejecting as frivolous the argument of defendant that fee award should not include fees for preparation of fee petition). This case is no different.

Second, even a valid Rule 68 offer would only shift an entitlement to costs in the event that the rejecting party failed at trial to do better than the offer. In particular, the Rule states that "[i]f the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." Defendant only offered to pay $150,000.00 in fees. However, the Court has now found that Plaintiff was entitled to approximately $185,000.00 in attorneys fees and more than $6,000.00 in costs (see below) **as of the time of the offer**. Because Defendant's offer is nearly $40,000.00 less than the amount which the Court has now found to be a reasonable award in this case as of the date of the offer, Rule 68's cost-shifting provision is not triggered, even assuming the Rule applies to Defendant's June 7 offer. Plaintiff is entitled to full compensation for fees incurred establishing entitlement to fees.

## IV. PLAINTIFF'S COSTS

In Plaintiff's Revised Cost Summary, she seeks a total of $8,863.12 in costs. The Cost Summary contains several items that are not taxable as costs under Civil L.R. 54-3. In particular, the following costs are not taxable: 1) telephone calls ($33.91); 2) fax charges ($236.50); 3) messenger service ($185.83); 4) postage ($42.58); 5) legal research ($8.50); 6) miscellaneous ($323.68). In addition, Plaintiff may not recover the $10.50 sought in the hearing brief for messenger service after the Reply was filed. The Court finds that all other costs sought by Plaintiff are reasonable and are allowable under the Local Rules. Therefore, the Court recommends that Plaintiff's costs be awarded in the amount of $8,032.12.

## V. CONCLUSION

Based upon the above analysis, the Court recommends that Plaintiff's motion be granted and that

the Court award Plaintiff $238,795.00 in attorneys fees, that is, $244,745.00 (total attorney's fees sought by Plaintiff) minus $5,950.00 (17 hours of Mr. Lee's time at $350/hour). The Court further recommends that Plaintiff be awarded $8,032.12 in costs.

Dated: November 17, 1999

JOSEPH C. SPERO
United States Magistrate Judge