**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

MYRNA ABAD,

    Plaintiff,

v.

WILLIAMS, COHEN & GRAY, INC.,

    Defendant.

No.  C 06-02550 SBA

**ORDER**

[Docket No. 65]

## INTRODUCTION

Before the Court is plaintiff Myrna Abad's Motion for Reconsideration (the "Motion") [Docket No. 65], defendant Williams, Cohen & Gray, Inc.'s Opposition to the Motion (the "Opposition") [Docket No. 67], Abad's Reply to the Opposition (the "Reply") [Docket No. 68], and Abad's Memorandum in Support of the Motion (the "Memorandum") [Docket No. 70]. On April 23, 2007, Magistrate Judge Joseph C. Spero issued a Report and Recommendation Regarding Plaintiff's Motion for an Award of Costs and Attorney Fees (the "Report") [Docket No. 56]. On June 26, 2007, the Court adopted and modified in part the Report. *See* Order at 1 (the "Order") [Docket No. 60]. In her Motion, Abad requests the Court reconsider its Order, under Federal Rule of Civil Procedure 59(e), on the ground *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973 (9th Cir. 2008), a recent Ninth Circuit decision, changed the law applicable to motions for attorneys' fees. As discussed below, the Court DENIES the Motion, as *Camacho* did not change the law applicable to motions for attorneys' fees, and because the Court determined Abad's attorneys' fees in accordance with the procedures discussed in *Camacho*.

## BACKGROUND

Abad filed a Complaint [Docket No. 1] on April 12, 2006, and a First Amended Complaint [Docket No. 4] on May 24, 2006, against Williams, Cohen & Gray, Inc. ("WCG"), alleging it had violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the California Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et seq*. *See* Docket Nos. 1, 4.

1  Abad's attorneys were O. Randolph Bragg, Irving L. Berg, and Craig Shapiro.  Report at 3:19-21,
2  4:1-2.  WCG made a settlement offer pursuant to Federal Rule of Civil Procedure 68, which Abad
3  accepted, and the Court entered judgment and dismissed the case on October 13, 2006.  *See* Docket
4  No. 26.

5  Abad then filed a Motion for an Award of Costs and Attorney Fees on October 26, 2006, *see*
6  Docket No. 27, which the Court referred to Magistrate Judge Spero on January 31, 2007, *see* Docket
7  No. 46.  On April 23, 2007, Magistrate Judge Spero issued his Report.  *See* Report at 1.  In it, he
8  reduced the number of hours Abad's counsel spent on her matter because he found it was a relatively
9  straightforward one.  *Id.* at 10:24-27.  He also reduced Bragg's hourly rate based on a rate Bragg had
10 recently been awarded in another FDCPA case.  *Id.* at 9:4-7.  Magistrate Judge Spero also reduced
11 Berg's rate based on declarations by two class action attorneys discussing Berg's reasonable hourly
12 rate, and based on a recently decided FDCPA case involving another attorney.  *Id.* at 10:17-22.  As a
13 result, he recommended the Court award attorneys' fees and costs in the amount of $8,458, at the
14 hourly rates of $435 for Bragg, $350 for Berg, and $200 for Shapiro.  *Id.* at 16.

15 On May 7, 2007, WCG filed objections.  *See* Docket No. 57.  Abad did not file a response.
16 On June 26, 2007, the Court adopted in part and modified in part the Report.  Order at 1:18-19.
17 Specifically, the Court decreased Bragg's and Berg's hourly rate to $250 because of recently
18 awarded rates in other Northern District FDCPA cases, thus reducing the overall award
19 to $5,930.50.  *See Id.* at 7:2-5, 9-15.

20 On July 2, 2007, under Civil Local Rule 7-9(a), Abad filed a motion for the Court to grant
21 her leave to file the Motion, *see* Docket No. 61, which the Court granted, *see* Docket No. 64.  On
22 March 20, 2008, Abad filed her Motion.  *See* Mot. at 1.  In it, she requested the Court stay
23 reconsideration until the Ninth Circuit decided *Camacho v. Bridgeport Financial, Inc.*, No. C 04
24 00478 CRB, slip op., 2007 WL 1302731 (N.D. Cal. May 2, 2007), a FDCPA case litigated by Bragg,
25 Berg, and another attorney.  *See* Mot. at 1:26-2:3.  On March 31, 2008, WCG filed its Opposition,
26 arguing *Camacho*'s resolution would have no bearing on Abad's fees, and that she had failed to
27 show the new facts, new law, or manifest error necessary to support reconsideration.  *See* Opp'n
28 at 5:7-12.  On April 4, 2008, Abad filed her Reply, pointing out various courts in the Northern

District had awarded Bragg hourly rates ranging from as low as $200 to as high as $465, and that *Camacho* would resolve this discrepancy. *See* Reply at 2:15-3:8. On April 22, 2008, the Ninth Circuit decided *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 973 (9th Cir. 2008). On May 6, 2008, Abad filed her Memorandum analyzing *Camacho*'s impact on this matter. *See* Mem. at 1.

## LEGAL STANDARD

Generally, a post-order motion seeking a substantive change in an order, as opposed to a clerical one, will be considered a Rule 59(e) motion, if filed within ten days of entry. *Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 898-99 (9th Cir. 2001). If it is filed more than ten days after entry, however, then it will be considered a Rule 60(b) motion. *Id.* at 899. Regardless of whether a motion is titled with Rule 59(e) or Rule 60(b), a court will construe it, "however styled, to be the type proper for the relief requested." *Miller v. Transam. Press, Inc.*, 709 F.2d 524, 527 (9th Cir. 1983). Under Rule 59(e), "[a] motion to alter or amend a judgment must be filed no later than 10 days after entry of the judgment." Fed. R. Civ. P. 59(e). Although Rule 59(e) does not specify any grounds for relief, it is generally appropriate to amend a judgment where a court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted); *see also* Civil L.R. 7-9(b).

## ANALYSIS

**I.   Abad filed a Rule 59 Motion.**

As a threshold matter, the Court addresses the timing of Abad's Motion and Memorandum. With regards to the Motion, Abad filed it six days after the Court entered its Order. *See* Mot. at 1. Thus, the Court will treat it as a motion to alter or amend judgment under Rule 59(e). *See Am. Ironworks*, 248 F.3d at 898-99. Unfortunately, the only request Abad made in her Motion was for the Court to stay its disposition of her Motion until the Ninth Circuit had decided *Camacho*. Mot. at 1:26-2:3. In essence, however, she was actually requesting an extension of time to file her Motion, but not as required under Civil Local Rule 6-2. WCG then filed an opposition, essentially

3

1  arguing any extension would be futile. *See* Opp'n at 5:11-6:2. Abad then replied an extension
2  would resolve the large gap in Berg's and Bragg's fees allegedly awarded in other FDCPA cases.
3  *See* Reply at 2:15-3:8.

4  Before the Court could rule on the extension issue, however, the Ninth Circuit decided
5  *Camacho*, and Abad filed her Memorandum. *See* Mem. at 1. In it, Abad essentially asked the Court
6  to reconsider its Order, alleging *Camacho* had worked an intervening change in the law. *Id.*
7  at 1:26-2:2. Essentially, Abad had filed the points and authorities for her Motion after the time to
8  file pleadings had lapsed, without seeking leave of Court under Civil Local Rule 7-3(d).
9  Nonetheless, the Court will consider the Memorandum in disposing of her Motion for two reasons.
10 First, Abad brought *Camacho* to the Court's attention before the pleading cycle closed, and the
11 Ninth Circuit decided it before the Court entered this Order. Thus, even were the Court inclined to
12 strike her Memorandum, the Court would still address *Camacho*'s impact on the Court's June 26,
13 2007 Order. Second, the Court will not strike the Memorandum, because, as discussed below, it
14 provides her with absolutely no assistance, and it thus works no prejudice on WCG for the Court to
15 consider it.[1]

16 **II.    Abad fails to show new facts, new law, or manifest error.**

17 The question before the Court is whether *Camacho* is an intervening change in the
18 controlling law. The Court holds it is an intervening development in the controlling law, but not one
19 of change. It is an "intervening" development, because as just discussed, the Ninth Circuit decided
20 *Camacho* while Abad's Motion was pending disposition by the Court. Further, it is a "controlling"
21 development, because *Camacho* was a FDCPA case litigated by Bragg and Berg, and on appeal, the
22 Ninth Circuit, which decisions bind this Court, addressed how the district court should have
23 determined Bragg's and Berg's fees. *See Camacho*, 523 F.3d at 978-83. Specifically, the Court of
24 Appeals vacated a determination of attorneys' fees, including $200 hourly rates for Bragg and Berg,
25 because a Northern District court: (1) failed to identify the relevant community; (2) failed to address
26 the prevailing market rate; and (3) awarded attorneys' "fees-on-fees" without calculating a lodestar.

27

28  [1]    Nor, the Court notes, has WCG objected to the Court considering the Memorandum.

4

1  *Id.* at 973.  As discussed below, however, *Camacho* fails to provide an "intervening *change* in
2  controlling law," that would warrant the Court amending its Order under Rule 59(e), because under
3  *Camacho*, the Court properly determined Abad's fees.[2]

**A.      The Court properly determined the relevant community.**

The district court in *Camacho* sat in the Northern District of California.  *Camacho*, 523 F.3d at 973.  When it determined a reasonable hourly rate for Berg and Bragg, it considered eleven cases, ten of which were from *outside* the Northern District, and drawn mostly from Ohio, Oregon, New York, and Florida.  *Id.* at 979.  The Court of Appeals held the district court failed to determine a reasonable hourly rate based on the prevailing rates in the "relevant community," which was the Northern District, as it was the forum in which the district court sat.  *Id.*  The Court of Appeals, however, held courts may consider cases outside their district if they are from a community "comparable" to their district.  *Id.*  The Court of Appeals also held the district court erred by failing to analyze, much less mention, a Northern District case cited in Bragg's declaration, *Defenbaugh v. JBC & Assocs., Inc.*, No. C 03-0651 JCS, 2004 WL 1874978 (N.D. Cal. Aug. 10, 2004) (unreported).  *Camacho*, 523 F.3d at 979.

In contrast, in this case, six out of the eight cases to which the Court referred in its Order were from the Northern District.  Order at 4:1-5:18.  Further, unlike the district court in *Camacho*, to the extent the Court considered two FDCPA cases from the Southern District of New York, which it only found "somewhat persuasive," it did so because it found the Southern District's cost of living

---

[2]      Abad also directed the Court to two other cases decided after the Court's Order, neither of which assists her.  First, in her points and authorities for her motion for leave to file the Motion, Abad directs the Court to *Johnson v. Credit International, Inc.*, 257 F. App'x 8 (9th Cir. 2007).  Docket No. 62 at 5:6-7.  Although *Johnson* is an unpublished case, the Court may consider it, because in its Order the Court analyzed *Johnson v. Credit International, Inc.*, No. C 03-100 SC, 2005 WL 2401890 (N.D. Cal. July 28, 2005) (unreported)).  *See* 9th Cir. R. 36-3(a); Order at 5:9-11.  The Ninth Circuit holding does not help Abad, however, as it affirmed hourly rates for Bragg and Shapiro of $250 and $110, respectively, *Johnson,* 257 F. App'x at 10, which are equal to or lower than the rates in the Court's Order, Order at 7:11.
        Second, Abad directs the Court in her Memorandum to consider *Campos v. Western Dental Services, Inc.*, No. C 05-02119 RMW, slip op., 2007 WL 2050976 (N.D. Cal. July 13, 2007), a Northern District FDCPA case.  Mem. at 5:9-12.  In *Campos*, the parties' settlement provided $52,500 would cover all fees and costs, and the defendants did not oppose a motion to award Bragg an hourly rate of $465.  *Campos*, 2007 WL 2050976, at *1.  As the case before the Court does not involve a settlement agreement with a fixed component for fees, *Campos* does not help Abad here.

5

1 was comparable to the Northern District's. *Id.* at 4:13-24.  And, unlike the district court in
2 *Camacho*, this Court considered the Northern District cases cited by Abad and WCG, including
3 *Defenbaugh*, and noted the "recent trend of cases in this district" that supported its determination.
4 *Id.* at 4:1-5:18, 6:4-6.  Thus, because the Court properly determined the relevant community under
5 *Camacho*, reconsideration is unwarranted here.

      **B.**      **The Court properly determined the prevailing market rate.**

In *Camacho*, the Ninth Circuit held the district court failed to factually support its determination of the prevailing market rate in the Northern District. *Camacho*, 523 F.3d at 979-81. Specifically, it noted six areas of concern.  First, the Ninth Circuit held the district court failed to identify which facts supported the hourly rates it determined. *Id.* at 980.  In this case, in contrast, the Court discussed recently awarded hourly rates for Berg, Bragg, and two other FDCPA attorneys. Order at 5:3-18.

Second, the Ninth Circuit held the district court failed to discuss the parties' declarations. *Camacho*, 523 F.3d at 980.  In this case, the Court received declarations from Berg, Bragg, and two attorneys and fully analyzed them in its Order.  Order at 5:28-6:26.

Third, the Ninth Circuit held the district court failed to distinguish between Bragg, Berg, and a third attorney representing Camacho, when awarding them the same hourly rate. *Camacho*, 523 F.3d at 980.  In this case, although the Court awarded the same hourly rate to both Bragg and Berg, it did so on separate rationales.  While Bragg had recently been awarded $250 per hour in *Lea v. Cypress Collections*, No. C 06 4288 JF, slip op., 2007 WL 988184 (N.D. Cal. Apr. 2, 2007), attorneys with experience similar to Berg's had been generally receiving $250 per hour in recent FDCPA cases.  Order at 5:1-11.

Fourth, the Ninth Circuit in *Camacho* held the district court abused its discretion "to the extent it relie[d] on cases decided years before the attorneys actually rendered their services." *Camacho*, 523 F.3d at 981.  Here, unlike the district court in *Camacho*, the Court relied on *recently* decided cases, the oldest dating from 2004 and the newest, *Lea*, decided less than three months before the Order's entry.  Order at 5:1-11.

///

6

Fifth, the Ninth Circuit held the district court should not have restricted its analysis to FDCPA cases, in determining a reasonable hourly rate, because it was Congress' intention "that counsel [in FDCPA cases] be awarded fees commensurate with those which they could obtain by taking *other types of cases*." *Camacho*, 523 F.3d at 981 (emphasis added) (quoting *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995)). Although the district court in *Camacho* included a non-FDCPA Northern District case in its analysis, the Ninth Circuit found the district court failed to explain how this case factored into it. *Camacho*, 523 F.3d at 981. In contrast, this Court did not restrict its analysis to FDCPA cases, but analyzed the same non-FDCPA case discussed in *Camacho*. Order at 4:18-21. Further, in its analysis, this Court explained it only found that case "somewhat persuasive," as that court awarded a low $190 as a reasonable hourly rate for San Francisco attorneys. *Id.*

Sixth and last, the Ninth Circuit in *Camacho* found the district court failed to determine the prevailing market rate "for similar services by lawyers of reasonably comparable skill, experience, and reputation" to Bragg's and Berg's. *Camacho*, 523 F.3d at 980 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). The Ninth Circuit noted the fee applicant had the initial burden to produce satisfactory evidence, including their attorneys' own affidavits, in support of their requested rates. *Camacho*, 523 F.3d at 980. The court then noted, although both the fee applicant and the respondent had filed declarations regarding the requested rates, the district court neither discussed them nor explained how a $200 hourly rate was the prevailing market rate in light of the attorneys' experience and expertise. *Id.*

As already discussed, here, unlike the district court in *Camacho*, this Court discussed all submitted declarations in determining Berg's and Bragg's hourly rates. Order at 5:28-6:26. Moreover, this Court discussed recently decided Northern District FDCPA cases, which spoke directly to Berg's and Bragg's experience and expertise because they involved similarly experienced

///

///

///

///

7

attorneys or Bragg himself. *Id.* at 5:12-18. Thus, because the Court did not make any of the six errors charged to the district court in *Camacho*, but properly determined the prevailing market rate, reconsideration is unwarranted here.[3]

**CONCLUSION**

Accordingly, the Court DENIES Abad's Motion for Reconsideration [Docket No. 65].

IT IS SO ORDERED.

July 18, 2008

_Saundra B Armstrong_
Saundra Brown Armstrong
United States District Judge

---

[3] Other than the relevant market and the prevailing market rates, the Ninth Circuit in *Camacho* also addressed how courts should calculate "fees-on-fees." The Court held when a prevailing party requests attorneys' fees for the time spent preparing a motion requesting attorneys' fees, a court should determine them by using a lodestar calculation. *Camacho*, 523 F.3d at 981-83. The district court in *Camacho*, however, merely determined a lump sum. *Id.* at 981. Here, however, the issue is irrelevant, as Abad has not raised it in her Motion.

8